FILED
2017 Mar-27  AM 09:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| REBECCA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15-cv-2025-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.  Introduction

The claimant, Rebecca Smith, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Smith timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Smith was 47 years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has a seventh-grade education. (Tr. at 192, 197). Her past relevant work experience includes employment as a retail sales clerk, security

guard, companion/sitter, and cook.   (Tr. at 26).    Ms. Smith claims that she became disabled on August 15, 2012, due to congestive heart failure, thyroid disorder, hypertension, fibromyalgia, and back pain.   (Tr. at 196).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If she is, the claimant is not disabled and the evaluation stops.   *Id*.   If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.    20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.   *Id*.   The decision depends on the medical evidence in the record.   *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).   If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).    If the claimant's

impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Smith had not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. at 15).  According to the ALJ, claimant's degenerative disc disease, fibromyalgia, thyroid disorder, diabetes mellitus, hypertension, obesity, chronic obstructive pulmonary disease ("COPD"), status post-myocardial infarction, acute coronary syndrome with syncope, and anxiety disorder are considered "severe" based on the requirements set forth in the regulations.  (*Id.*) However, the ALJ found that these impairments, considered singly and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 17).  The ALJ found that Ms. Smith's allegations were "not totally credible," and he determined that Ms. Smith has the residual functional capacity to perform

> sedentary work as defined in 20 CFR § 416.967(a) except occasional pushing or pulling with lower extremities; no climbing ladders, ropes, scaffolds; occasional climbing ramps and stairs,   occasional balancing, kneeling, crouching, crawling, stooping; avoid concentrated exposure to extreme heat and cold, vibration, fumes, odors, chemicals, gases, dusts, poorly ventilated areas; no exposure to dangerous machinery, unprotected heights.  During a regular scheduled workday, or the equivalent thereof, individual can; 1) Understand and remember short and simple instructions, but is unable to do so with detailed o[r] complex instructions. 2) Do simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks.   3) Have no more than occasional, casual contact with the general public.   4) Deal with changes in work place if introduced occasionally and gradually and are

well-explained. 5) Not be required to read instructions or write reports. 6) Do no math calculations.

(Tr. at 17).

According to the ALJ, Ms. Smith is unable to perform any of her past relevant work, she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations.   (Tr. at 26).   He determined that transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding of "not disabled" regardless of transferability of job skills.   (*Id.*)   The ALJ found that Ms. Smith has the residual functional capacity to perform a range of sedentary work.   (*Id.*)   Even though the claimant cannot perform the full range of sedentary work, the ALJ used Medical-Vocational Rule 201.19 as a guideline for finding that there are a number of jobs in the economy that Ms. Smith is capable of performing, such as table worker, nut sorter, and cuff folder.   (Tr. at 27).   The ALJ concluded his findings by stating that the claimant "has not been under a disability, as defined in the Social Security Act, since August 15, 2012, the amended alleged onset date."   (Tr. at 29).

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.   *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of

claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.  Discussion

Ms. Smith alleges that the ALJ's decision should be reversed and remanded for three reasons.   First, she argues that the Appeals Council failed to consider new, relevant evidence, a report from Dr. Wilson, which she presented after the ALJ's determination.   In addition, she argues that the ALJ improperly drew adverse inferences from her lack of medical treatment.   She further asserts that the ALJ's decision is not based on substantial evidence when the report from Dr. Wilson is considered.    Also pending in this case is the plaintiff's motion to remand the case, asserting that remand is mandated by Social Security Ruling 16-3p.   The court will examine the grounds for appeal, along with the motion to remand, in turn.

### A.  New Evidence

After the ALJ's denial of Ms. Smith's SSI petition, the claimant presented evidence that was new and material to her claim.  This evidence consisted of a psychological evaluation from Dr. David Wilson ("the new evidence"), based on a consultation on December 2, 2014.  (Tr. at 927-32).  The psychologist met with Ms. Smith once, but also had reviewed her medical records from Stringfellow Memorial Hospital from February 17, 2014, and from Northeast Alabama Regional Medical Center from March 9, 2012, to March 5, 2014.  Dr. Wilson opined that Ms. Smith was "highly depressed and anxious," would be "highly impaired" in her

"ability to withstand the pressures of day to day occupational functioning," and was not likely to improve significantly in the next 12 months.   (Tr. at 930).

Ms. Smith's assertion that the Appeals Council failed to consider the new evidence may be addressed using the same analysis was used by the Eleventh Circuit Court of Appeals in *Mitchell v. Commissioner, Social Security Administration*, 771 F.3d 780 (11th Cir. 2014).   As in the instant case, the Appeals Council in *Mitchell* "denied [the claimant's] request for review, explaining that it had considered [his] reasons for disagreeing with the ALJ's decision as well as his additional evidence," and determined that the new evidence did not provide a basis for changing the ALJ's decision.   *Id*. at 782.   Also similar to the instant case, the Appeals Council in *Mitchell* did not engage in a discussion of the new evidence.   *Id*.   The Eleventh Circuit held that "the Appeals Council is not required to explain its rationale when denying a request for review."   *Id*. at 784.   Because the Appeals Council explicitly stated that it "receive[d] new and material evidence," but concluded that the ALJ's decision was not contrary "to the weight of all the evidence now in the record," it is clear, in fact, that the Appeals Council considered the new evidence submitted by the plaintiff.   This court has no reason to second-guess the assertion by the Appeals Council that it considered the new evidence offered by Ms. Smith, even though it provided no extensive discussion of that evidence or its impact on the assessment reached by the ALJ.

The claimant's reliance on the recent Eleventh Circuit case of *Washington v. Social Security Administration*, 806 F.3d 1317 (11th Cir. 2015), is misplaced because *Washington* can be distinguished from the instant case.   Unlike the instant case and *Mitchell*, the Appeals Council in *Washington* erroneously *refused* to consider new evidence presented to it on appeal, mistakenly concluding that the new evidence was not "chronologically relevant."   *Id.* at 1323.   Because the Eleventh Circuit found that this basis for refusing to consider the evidence was wrong, the refusal to consider it was a legal error requiring reversal.   In this case, the Appeals Council did not refuse to consider the new evidence, but simply found that it did not change the conclusion reached by the ALJ.

Because the Appeals Council considered the new evidence, as it stated, Ms. Smith is not entitled to relief on this claim unless she shows that the "new evidence renders the denial of benefits erroneous."   *Beavers v. Social Sec. Admin.*, 601 Fed. App'x 818, 822 (11th Cir. 2015).   If the evidence is either cumulative of, or consistent with, the evidence that was before the ALJ, it will not render the denial of benefits erroneous.   *Id.* at 823.

In this case, the evidence from Dr. Wilson is cumulative only to the extent that it describes Ms. Smith as depressed and anxious, but is inconsistent in that it describes her depression and anxiety as severe and recurrent, such that her ability to work is "highly impaired."   (Tr. at 930).   It is not cumulative to any other

assessment by a mental health professional, in that Ms. Smith had not been treated by any psychologist or psychiatrist.[1]   It was her testimony, and some medical records indicate, that she was unable to pay for medical treatment and instead received treatment only in urgent situations and only from the emergency room. Beginning as early as March 19, 2012, the plaintiff appeared in the emergency room of the Northeast Alabama Regional Medical Center complaining of "panic attacks." (Tr. at 513-514).   The attending physician described it as her "chief complaint." At the time, her mood was described as "inappropriate as she is tearful and upset" (Tr. at 516), and her mood was described as "one of hopelessness."   (Tr. at 518). Four days later, on March 23, 2012, she returned to the emergency room, complaining that she was "real, real, real depressed."   The admission sheet notes that she was "suicidal."   (Tr. at 522).   On both occasions, however, she was deemed stable enough to be released.   After March 2012, despite multiple visits to emergency rooms for a variety of ailments, she never again complained of depression or anxiety attacks until she was evaluated by Dr. Wilson almost three years later, in December 2014.   Plainly, there is some substantial evidence that she might suffer from severe depression, but because this evidence was not presented to the ALJ, the court has no evaluation of it on the context of her entire medical history.

---

[1]     A January 2014 notation from a doctor who saw her in the emergency room after her heart attack noted that she "recently sees a psychiatrist," but further notes that "the patient is unable to go to the psychiatrist."   (Tr. at 710).

Nor did the ALJ have the opportunity to weigh whether and how this evidence might impact her RFC.

The new evidence also is inconsistent with the ALJ's decision in that it states that Ms. Smith's failure to comply with her medication regimen is because she is "not able to get or afford the medication she needs." *Id.* The new evidence supplies a medical source opinion that the plaintiff is unable to work because of her severe depression and anxiety; it further provides evidence that her noncompliance is due to her lack of ability to pay.[2] These "new" and "material" facts give rise to a "reasonable possibility" that the ALJ decision would change. *See Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

The ALJ did not discuss Listing 12.04 (affective disorders) in his determination, because evidence of Ms. Smith's severe depression had not yet been provided.[3] Such evidence now has been presented. The ALJ did consider the limited evidence regarding plaintiff's anxiety disorder as applicable to Listing 12.06 (anxiety-related disorders), but upon submitting new evidence to the Appeals

---

[2] It is well settled that "poverty excuses noncompliance," such that noncompliance does not prevent a claimant from receiving benefits where the noncompliance is a result of the claimant's inability to afford treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1212–14 (11th Cir. 1988) (reversing and remanding ALJ's denial of benefits where ALJ relied "primarily if not exclusively" on evidence concerning the claimant's noncompliance with prescribed treatment, without regard to the claimant's ability to afford the treatment).

[3] The plaintiff did report to the emergency room on March 23, 2012, that she had suicidal thoughts and was diagnosed with "Depression - prolonged." (Tr. at 370, 376). On other visits to the ER she was noted to be tearful, upset, or hopeless. (Tr. at 365, 367).

Council, plaintiff's counsel argued that the new evidence supported a finding that Ms. Smith meets Listings 12.04 and 12.06.   Very limited information regarding Ms. Smith's depression was before the ALJ.   Under paragraph B of Listing 12.04, the requirement is met when the medical evidence demonstrates that a claimant has at least two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.   20 C.F.R. Part 401, Subpt. P, App. 1, § 12.04(B).   "Marked" means "more than moderate but less than extreme;" marked restriction occurs when the degree of limitation seriously interferes with a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis."   *Id*. § 12.00(C); see 20 C.F.R. § 416.920a(c)(4) (describing a five-point scale used to rate the degree of limitation: none, mild, moderate, marked, and extreme).   Dr. Wilson's report is relevant to the requirements of Listing 12.04(B), and there does not appear to be any contrary evidence in the record related to the claimant's depression and agoraphobia.   However, it is not within the province of this court to decide facts or weigh evidence.   Accordingly, it is appropriate to require the Commissioner to determine, for the first time, whether Ms. Smith is eligible for benefits pursuant to listing 12.04.   This court cannot weigh the value of Dr. Wilson's opinion, but the ALJ can and should do so.   Because the evidence from Dr. Wilson is new, material,

and chronologically relevant, and because it is neither cumulative of nor consistent with prior assessments, there is a reasonable possibility that it could alter the ALJ's decision.   Accordingly, Ms. Smith's claim is due to be remanded for a full and fair hearing on all of the evidence, including Dr. Wilson's report.

     B.  *Adverse Inferences*

The plaintiff asserts that the ALJ improperly drew adverse inferences from Ms. Smith's lack of medical treatment.  Specifically, the ALJ found Ms. Smith's degenerative disc disease to be "non-disabling as the claimant had limited treatment in the emergency room for this impairment," "did not follow up with a treating physician on a regular basis," and "has not undergone extensive treatment of the kind customarily given for intractable pain such as epidural injections" or physical therapy.  (Tr. at 23).   The plaintiff's counsel contends that Ms. Smith did not receive more extensive treatment because of her inability to pay.

While it is true that an inability to receive treatment because of a lack of insurance and/or income does not support a denial of a disability claim, the lack of medical evidence supporting the *need* for more extensive treatment may support an ALJ's adverse finding.  Here, there is no record that any of the doctors who did evaluate Ms. Smith ever recommended that she undergo more extensive treatment

for her disc degeneration.   Accordingly, the ALJ's determination regarding Ms. Smith's degenerative disc disease is not error that requires remand.[4]

### C.   *Substantial Evidence*

Plaintiff also asserts that, when Dr. Wilson's report is considered along with the other evidence, the ALJ's decision regarding Listing 12.04 and 12.06 is not supported by substantial evidence.   Prior decisions provide guidance concerning the substantial evidence standard and the evaluation of newly presented evidence. In *Ingram v. Commisioner of Social Security Admin.*, the claimant requested review of the ALJ's decision by the Appeals Council and presented a new psychological evaluation in support of her request for review.   496 F.3d 1253 (11th Cir. 2007). Similarly to the instant case, the clamant in *Ingram* argued that newly presented evidence rendered her eligible for assistance pursuant to listing 12.05(C).   *Id*. at 1266.   Also like the instant case, the Appeals Council considered the evidence and denied review.   *Id*. at 1259.   The Eleventh Circuit Court of Appeals provides a helpful discussion in *Ingram* of other cases in which the Appeals Council considered new evidence but denied review.

> Nearly forty years ago, our predecessor circuit considered evidence first presented to the Appeals Council to determine that an application for benefits required further consideration by the Commissioner.   In *Daniel v. Gardner*, the administrative law judge had been misled by an

---

[4]     On remand, however, the ALJ will be required to consider her degenerative disc disease in combination with any and all other impairments.

incorrectly transcribed date in a doctor's letter, and the doctor filed new evidence with the correct date in the Appeals Council.  390 F.2d 32 (5th Cir. 1968).  The Appeals Council considered the evidence but denied review.  *Id*. at 33.  We faulted the Appeals Council for not correcting the administrative law judge because "[t]he Appeals Council . . . had the benefit of Dr. Lumpkin's subsequent report that appellant had been permanently and totally disabled since 1954[, and t]his and Dr. Kay's corroborating findings of appellant's disability in 1957 stood undisputed in the record before the Appeals Council."  *Id*.  Instead of ordering an award of benefits, we directed the district court to remand to the Commissioner to determine whether, in the light of the undisputed medical evidence, the claimant met the other qualifications to be eligible for disability benefits.  *See id*. at 34.

Sixteen years later, we again considered evidence first presented to the Appeals Council to determine that a claimant was entitled to an award of benefits.  In *Bowen v. Heckler*, the claimant filed evidence in the Appeals Council, which considered the evidence but denied review. 748 F.2d 629 (11th Cir. 1984).  We held that "the Appeals Council did not adequately evaluate the additional evidence" and, citing earlier precedents, reasoned that "[w]e have previously been unable to hold that the Secretary's findings were supported by substantial evidence under circumstances such as these."  *Id*. at 634.  In contrast with *Daniel*, we did not remand to the Commissioner.  After quoting sentence four of section 405(g) in full and discussing it at length, we concluded that a reversal of the final decision of the Commissioner was appropriate.  We held that "the Appeals Council should have awarded Bowen disability insurance benefits," and we remanded to the district court "for entry of an order . . . that such an award be made."  *Id*. at 637.

*Ingram*, 496 F.3d at 1262-1263.

Accordingly, this court is tasked to consider whether the final decision of the Commissioner, based on the entire record which includes the new evidence, is

supported by substantial evidence.   The ALJ determined that "[p]er the totality of the evidence the claimant's impairments, singular or combined, do not cause any listing level limitation."   (Tr. at 17).   In making this determination, the ALJ considered the medical records provided (most of which document emergency room visits) and the report of Joyce Goldsmith, M.D., a state agency consultant.   (Tr. at 21).

None of the medical sources considered by the ALJ had performed any psychological tests on Ms. Smith, although her tearful and hopeless demeanor was often noted.   Had any of the consulting examiners had access to the new evidence, it is possible that a diagnosis of severe depression, coupled with her other medical impairments, may have prompted the ALJ to consider whether Ms. Smith is eligible for benefits under Listing 12.04.

The court recognizes that it can do no more than speculate as to what the treating doctors or the ALJ would have determined had they had the new evidence. It is for that reason the Appeals Council's decision not to review or remand the claim is problematic.   The Appeals Council stated that the new evidence was not sufficient to overturn the decision of the ALJ.   However, the ALJ made no determination regarding the specific listing now at issue (12.04).   Without a decision by the ALJ regarding Listing 12.04, there can be no conclusion of whether the ALJ's determination regarding that issue was based on substantial evidence.

Ms. Smith asserts that, *in light of the new evidence*, she is eligible for benefits under Listing 12.04.   This argument was not evaluated or addressed by the ALJ, because the argument had not yet been made at the time of the ALJ's decision.

### D.   Social Security Ruling 16-3p

The plaintiff also has filed a motion for remand, contending that SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), should be applied retroactively to her case, making the ALJ's determination of Ms. Smith's credibility untenable.   Social Security Ruling 16-3p, which became effective on March 28, 2016, superseded former Ruling 96-7p, and was enacted to provide "guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims filed pursuant with the Commissioner."   SSR 16-3p, 2016 WL 1119029 at *1.   The Social Security Commission explained the new ruling as:

> eliminat[ing] the use of the term "credibility' from sub-regulatory policy, as our regulations do not use this term.   In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character.   Instead, we will more closely follow our regulatory language regarding symptom evaluation.
>
> ...
>
> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.   The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.   Rather, our adjudicators will focus on whether the evidence establishes a medically determinable

impairment that could reasonably be expected to produce the individual's symptoms, and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities....

*Id*. at *1, 10.

In this case, the court need not address whether the ruling is to be applied retroactively, because, even if retroactive, it does not apply in this case.   The ruling cited by the plaintiff need not be considered in cases where an ALJ does not directly question or discredit the character of the claimant. The purpose of SSR 16-3p is to eliminate the use of the term "credibility" and clarify that subjective symptom evaluation is not an examination of an individual's character.    The ALJ's use of the term "credibility" was not an attack on Ms. Smith's character or veracity, but simply a determination of whether her subjective statements regarding her pain and limitations were supported by objective medical records and other evidence in the record.   While the Eleventh Circuit Court of Appeals has not yet addressed the application of this ruling, this court agrees with the Seventh Circuit Court of Appeals' assessment that the revision of SSR 96-7p by SSR 16-3p was "meant to clarify that administrative law judges aren't in the business of impeaching claimants' character."   *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).   That court added, however, that "obviously, administrative law judges will continue to

assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Id.*

Another judge within this district has similarly followed the Seventh Circuit's opinion in affirming an ALJ's assessment of a claimant's pain. *See Hargress v. Berryhill*, 2017 WL 588608 (N.D. Ala. Feb. 14, 2017).  A district court for the Northern District of Texas also has rejected the application of SSR 16-3p to undermine a credibility determination that is not based on the character of the plaintiff, noting that the ruling is "mostly semantic."  *Howard v. Berryhill*, 2017 WL 551666 \*7 (N.D. Tex., Feb. 10, 2017).

A contrary finding would hamstring ALJs who must evaluate pain and subjective complaints, and would lead to the result that an ALJ would have to render a finding of disability for any plaintiff who simply testified that his or her pain, arising from a condition that was documented in the objective evidence, was disabling.  It is clear that such a result was not intended by SSR 16-3p, and that ALJs must be able to evaluate a claimant's subjective descriptions of his or her pain and limitations.

In this case the ALJ did not make a pronouncement about the plaintiff's character or overall truthfulness, and retroactive application of SSR 16-3p is irrelevant.   Accordingly, the motion for remand (doc. 16) is due to be and hereby is DENIED insofar as it is based on SSR 16-3p.

## IV.     Conclusion

Upon review of the administrative record, and considering all of Ms. Smith's arguments, the Court finds that the case is due to be remanded to the Commissioner for further consideration and a determination of whether, in light of the new evidence presented to the Appeals Council, Ms. Smith is eligible for benefits.

DONE this 27th day of March, 2017.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE